UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DANA SCUDERI-HUNTER,

                Plaintiff,

-against-

AMY B. MERKLEN, in her official capacity
as the Delaware County Attorney,
TINA B. MOLE, in her official capacity as Chairperson
of the Delaware County Board of Supervisors, the
DELAWARE COUNTY BOARD OF SUPERVISORS,
and the COUNTY OF DELAWARE.,

                Defendants.

Civil Action No.: 3:22-CV-0002 (LEK/ML)

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

---

Plaintiff, DANA SCUDERI-HUNTER, by and through her attorneys, Gleason, Dunn, Walsh & O'Shea, as and for her complaint, alleges upon information and belief, as follows:

## INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C.A. § 1983 et. Seq. for violations of Plaintiff's rights secured by the First and Fourteenth Amendments of the United States Constitution seeking redress for defendants' deprivations, under color of state law, of plaintiff's rights, privileges and immunities secured by the United States Constitution and the laws of the United States.

2. Because of Plaintiff's truthful testimony, given under oath at a Family Court proceeding Defendants have jointly and severally retaliated against Plaintiff in a variety of ways, including the prosecution of a Civil Service Proceeding that resulted in the removal of Plaintiff from her position of Commissioner of Social Services and through ongoing acts and omissions which have financially and personally injured Plaintiff.

## JURISDICTION AND VENUE

3. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

4. All of the events and/or omissions that give rise to the claims herein occurred in the Northern District of New York, Plaintiff resides in Delaware County, New York, in the Northern District of New York, and all Defendants reside in and/or have their official offices in Delaware County, New York. As such, venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b).

## JURY TRIAL DEMAND

5. A jury trial is demanded by the Plaintiff in this action.

## PARTIES

6. Plaintiff, Dana Scuderi-Hunter (hereinafter "Plaintiff" or "Commissioner Scuderi-Hunter") was at all relevant times Commissioner of Social Services for Delaware County. Plaintiff is a citizen of the United States and resident of Delaware County, New York.

7. Defendant Amy B. Merklen ("Merklen") is and has been at all relevant times the appointed County Attorney for the County of Delaware with offices in Delaware County, New York. Merklen resides in the County of Delaware, New York. Merklen is sued in her official capacity for actions taken under color of state law.

8. Defendant, Tina B. Mole ("Mole") is and has been at all relevant times Chairman of the Delaware County Board of Supervisors with offices in Delaware County, New York. Mole resides in the County of Delaware, New York. Mole is sued in her official capacity for actions taken under color of state law.

9. Defendant Delaware County Board of Supervisors ("Board of Supervisors") is the legislative and administrative arm of the County of Delaware, acting for and on behalf of the

County of Delaware. The Board of Supervisors is duly organized pursuant to the laws of the State of New York with offices located in Delaware County, New York. The Board of Supervisors is sued for actions taken under color of state law.

10. Defendant County of Delaware ("County") is a municipal corporation, duly organized pursuant to the laws of the State of New York. The County is sued for actions taken under color of state law.

## FACTUAL ALLEGATIONS

11. Plaintiff was employed by Defendant County as the Commissioner of Social Services for Delaware County. Effective January 7, 2015 Commissioner Scuderi-Hunter was appointed to a five-year term as Commissioner of Social Services and served in that role until her removal and termination on December 11, 2019.

12. Prior to her termination, on April 24, 2019, the Board of Supervisors unanimously approved an increase in Commissioner Scuderi-Hunter's annual salary to $96,204.

13. Commissioner Scuderi-Hunter's duties, as proglumated through the State and its subdivision the County, includes a constitutional duty to provide for the health, safety and welfare of children in need of foster care. (N.Y. Const., Art. XVII, § 1) That constitutional mandate is put into practice by the State Social Services Law and the regulations promulgated thereunder. Social Services Law § 65 delegates to the County Social Services Department the duty and responsibility to fulfill the constitutional and statutory mandate to provide for the safety and welfare of children in foster care pursuant to the following:

> 1) There shall be a county commissioner of public welfare in each county public welfare district who shall administer the public assistance and care for which the county public welfare district is responsible and shall have general supervision and care of persons in need in the territory over which he has jurisdiction.

3

2) The County Commissioner shall be responsible for the administration of all the assistance and care for which the County is responsible.

3) The County Commissioner shall act as the agent of the Department in all matters relating to assistance and care administered or authorized by the town public welfare officers.
(See Social Services Law § 65)

14. The combination of the State Constitution, State Social Services Law and Rules and Regulations issued by the State delegate to the County Social Services Commissioner the duty and responsibility to provide care and supervision for foster children put into the Commissioner's custody as a "parens patria". (Palmer v. Cuomo, 121 Ad2d 194, 195 (1st Dept. 1986).

15. Under the Social Services Law, Plaintiff, as the County Commissioner of Social Services, has the ultimate responsibility as custodial parent for all foster children in her custody, meaning she had the responsibility to make decisions on what the appropriate services are for children in her care for substance abuse services, taking into account the professional opinions of mental health experts such as Delaware County Office of Mental Health Services.

16. Plaintiff, as the County Commissioner of Social Services, also has the statutory obligation to advocate for alternatives to secured detention in order to house a child in her custody in the "least restrictive environment".

17. To protect the Commissioner from pressure and criticism from others who disagree with her decisions and actions, the Social Services Law mandates that the Commissioner be provided a five-year term. As the Courts have held, "[o]ne purpose of the five-year term of appointment required by Social Services Law § 116 (i) is to further the legitimate state interest of ensuring that local commissioners possess integrity, competence, and a measure

of independence from local political pressure." Matter of Perales v. Heimback, 166 AD2d 707, 708 (2nd Dept. 1990).

18.  At all relevant times, Plaintiffs' fulfilled her statutory and constitutional duties obligations and responsibilities consistent with applicable laws, rules and regulations and with a high level of competence and integrity.

## SCUDERI-HUNTER'S TESTIMONY IN COURT

19.  The central event underlying the Plaintiff's claims involved the truthful testimony that Commissioner Scuderi-Hunter provided during a Family Court proceeding in May of 2019. Specifically, the Attorney for a Child under Commissioner Scuderi-Hunter's supervision called her to testify at a Family Court proceeding involving the appropriate placement of a minor child in her custody.

20.  On or about October 2018, a minor child with a substance abuse problem came under the custody and control of Commissioner Scuderi-Hunter's pursuant to Scuderi-Hunter's official duties and responsibilities. For the purpose of this Complaint, the minor child is referred to as "Child One".

21.  The diagnosis and opinion issued by the Delaware County Alcohol and Drug Abuse Service Office of Mental Health was that Child One should receive substance abuse treatment. Simultaneously, Child One was frequently running away from foster care. That resulted in the Delaware County Probation Department bringing a Petition in Family Court seeking to have Child One placed in secure detention. Family Court temporarily placed the child in juvenile secure detention while the Social Services Department was trying to find an available slot at an appropriate facility for substance abuse treatment. When that placement of Child One

became delayed, the Family Court held a hearing on May 31, 2019 to determine how to expedite treatment for the child while still housing the child in the least restrictive environment.

22. The opinion of the Social Services Department and Scuderi-Hunter's opinion as Commissioner of Social Services was that Child One needed substance abuse treatment and because the child was not receiving that treatment in secure detention Petitioner, as Commissioner, needed to house the child in an alternative supervised foster care setting that would allow the child to receive substance abuse treatment immediately. The Department of Probation had a different opinion. The Probation Department's opinion was that the child should remain in secure detention even if that meant that substance abuse treatment was to be delayed.

23. Commissioner Scuderi-Hunter was called to testify at the Family Court proceeding on May 31, 2019 involving the appropriate placement of Child One in her custody. Commissioner Scuderi-Hunter was not technically subpoenaed to give said testimony but was called by the attorney for Child One.

24. At the May 31, 2019 hearing, the questions Commissioner Scuderi-Hunter testified to were all related to what was in the best interests of Child One consistent with the legal requirement that Child One be housed in the least restrictive environment.

25. At the May 31, 2019 hearing in Family Court, Commissioner Scuderi-Hunter testified truthfully under oath that Child One needed substance abuse treatment and that Social Services could provide a less restrictive setting than secure detention. She testified that Social Services could provide foster care in a setting where there was 24/7 supervision.

26. In the same proceeding on May 31, 2019 in Family Court, Defendant, Merklen explicitly informed the Court that she represented both the Probation Department and Scuderi-Hunter as the Commissioner of Social Services. That was so, even though Probation and

Commissioner Scuderi-Hunter had conflicting positions on the central issue of what was the appropriate least restrictive environment to house Child One.

27. A reasonable attorney in Defendant Merklen's position is required by the Rules of Professional Conduct to investigate the facts of the case and identify potential conflicts of interest in advance and make a reasoned judgment that she can effectively represent and advocate for the interests of both clients simultaneously.

28. If after an investigation a potential conflict is identified but a reasonable attorney would conclude that she could continue to effectively represent and advance the interests of both clients simultaneously before the Attorney may proceed simultaneously representing two clients with potentially divergent interests, an attorney in Merklen's position is required by the Rules of Professional Conduct to explain to each client with divergent interests the risks and benefits of continuing to represent both clients with divergent interests, obtain their consent in light of those risks and benefits and confirm that explanation of risks and benefits and their consent in writing.

29. At no point did Defendant Merklen explain to Scuderi-Hunter as Commissioner of Social Services and/or Scott Gluckart as Director of the Department of Probation what the risks and benefits were for her continued simultaneous representation or obtain an informed consent confirmed in writing permitting the simultaneous representation of two clients with divergent interests.

30. In the Family Court proceeding Attorney Merklen cross examined Scuderi-Hunter seeking to undermine the position (interests) advocated by Scuderi-Hunter in support of the Child in her custody while simultaneously advancing the contrary position (interests) of the Department of Probation.

31. The Family Court, after hearing Scuderi-Hunter's testimony, agreed that Child One should be placed in supervised foster care with an ankle bracelet to monitor the child's whereabouts. That placement allowed for substance abuse treatment consistent with a core recommendation of the County's Mental Health Services and consistent with the general legal principle that a minor child should be housed in the least restrictive appropriate setting.

32. Defendant Merklen's conduct at the May 31, 2019 hearing in simultaneously representing two clients with conflicting positions created an unwaivable conflict of interest as those terms are applied under the New York State Rules of Professional Conduct.

33. At a subsequent Family Court proceeding on June 6, 2019 concerning the placement of Child One, Commissioner Scuderi-Hunter answered questions posed by the Family Court Judge on the proper placement of Child One.

## THE RETALIATORY ACTS FOR SCUDERI-HUNTER'S TRUTHFUL TESTIMONY

34. In the days immediately following the Family Court proceeding, Defendants Merklen and Mole co-authored a letter dated June 11, 2019, reprimanding Commissioner Scuderi-Hunter for actions in Family Court including Commissioner Scuderi-Hunter's truthful testimony on May 31, 2019 and answers to the Family Court's questions on June 6, 2019. That letter is attached as **Exhibit A**.

35. More specifically, the letter, which was signed by Defendants Merklen and Mole, criticized Commissioner Scuderi-Hunter because the testimony she gave in the Family Court proceeding advocated that a foster child in her custody should be placed in a foster home rather than testify consistent with the position Merklen was advocating for on behalf of the Department of Probation. At the time Defendant Merklen was advocating on behalf of the Department of Probation's position that the child should remain in secure detention. The June 11, 2019 letter

8

stated that the testimony which accurately reflected the position of the Commissioner and the Department of Social Services was contrary to the County position.

36. The Family Court ruling was consistent with the position advocated by the Commissioner and the Department of Social Services and was in direct contravention to what Defendant Attorney Merklen and the Department of Probation sought.

37. The June 11, 2019 letter from Defendants Merklen and Mole also reprimanded the Commissioner for answering questions posed by the Family Court during the June 6, 2019 proceedings.

38. At the time of the June 11, 2019 letter was prepared neither Merklen nor Mole was a supervisor over Commissioner Scuderi-Hunter.

39. Under the Delaware County form of government as Commissioner of Social Services Scuderi-Hunter reported to the Committee for Social Services which consisted of three members of the Board of Supervisors.

40. At the request of the Committee for Social Services, Commissioner Scuderi-Hunter responded to the letter of June 11, 2019 with her letter dated June 20, 2019. Commissioner Scuderi-Hunter's letter is attached hereto as **Exhibit B**.

41. Commissioner Scuderi-Hunter was then subsequently placed on paid leave of absence with a letter dated July 9, 2019. That letter is attached hereto as **Exhibit C**.

42. The same letter confirmed that the County offered the Commissioner the opportunity to resign. When Scuderi-Hunter declined the County began an investigation that included false claims of fraud.

43. Five weeks after Commissioner Scuderi-Hunter was placed on paid leave, on or about August 15, 2019, charges were issued by the Defendant Board of Supervisors, against

Commissioner Scuderi-Hunter. The charges allege conduct unbecoming of an employee, insubordination, misconduct, breach of the duty of loyalty and mismanagement.

44. The charges filed against Commissioner Scuderi-Hunter were false and in retaliation for Commissioner Scuderi-Hunter providing truthful testimony and answering the Family Court's Questions in the Family Court proceeding. Attached hereto as **Exhibit D** are the charges brought against Commissioner Scuderi-Hunter.

45. Pursuant to CSL §75(3), a post-suspension hearing to review and determine Petitioner's discipline charges was held on September 18, 20, 23 & 24 and October 8, 9, 21, 22 & 25, 2019.

46. The County appointed Hearing Officer Alfred T. Riccio ("Riccio") to conduct the hearings.

47. On December 6, 2019, Riccio issued a Decision and Recommendation ("Riccio Decision") that Petitioner's employment be terminated. A copy of the Decision and Recommendation is attached as **Exhibit E**.

48. Because of the way in which the Riccio Decision is presented it is unclear precisely what acts alleged in the charges as inappropriate were sustained, but it appears that the Hearing Officer found that Scuderi-Hunter engaged in misconduct for the following acts alleged:

   a. Scuderi-Hunter had an uncooperative relationship with the County Attorney and the Probation Department because in a Family Court proceeding she failed and refused to conform her position and testimony on the appropriate placement and treatment for a child in her custody with the position advocated by the Attorney for the County and the Probation Department and as such she was disloyal to the

County and insubordinate for failing to follow the directions of the County Attorney (*See* Ex. E – Riccio Decision p. 21-23).

b. Scuderi-Hunter failed to notify the County Attorney in advance of a Family Court proceeding of her position on the proper treatment and placement of a child in her custody and as such engaged in misconduct by creating a conflict. (*See* Ex. E – Riccio Decision pp. 23-24 & 26).

c. Scuderi-Hunter was insubordinate and engaged in misconduct for disobeying an order from the County Attorney that she not communicate with the attorneys' retained to represent a child in her custody as the Commissioner (*See* Ex. E – Riccio Decision pp. 25 & 28).

d. Scuderi-Hunter engaged in misconduct in writing a letter addressed to the Board of Supervisors responding to the allegations raised by the County Attorney in that she stated the County Attorney had a conflict of interest. (*See* Ex. E – Riccio Decision pp. 30-31)

e. Scuderi-Hunter engaged in misconduct or incompetence when she raised her voice in a telephone conversation with an employee of Social Services in communicating what the position of the Department of Social Services was on the proper placement of a child under the supervision of the Department of Social Services. (*See* Ex. E – Riccio Decision p. 27).

f. Scuderi-Hunter engaged in misconduct constituting Criminal Child Neglect by delaying the approval of a request to administer a prescription drug to a child in her custody until the two treating professionals treating the same conditions and

11

symptoms communicated with each other over what each professional was doing. (*See* Ex. E – Riccio Decision p. 29).

g. Scuderi-Hunter engaged in misconduct by delaying the return of a work computer after her suspension. (*See* Ex. E – Riccio Decision p. 32).

## BOARD'S DECISION

49. After the hearing, Respondent Board of Supervisors was prevented from reviewing a full copy of the record before making its decision. That was accomplished by the County limiting access to the record including the transcript, exhibits and briefs by requiring an appointment to a review in the Personnel Department during regular business hours. Board members were not provided copies of any of the testimony, exhibits or briefs. As a result, upon information and belief none of the members of the Board of Supervisors reviewed any of the testimony, exhibits or briefs, and instead limited their review solely to the Riccio Decision, a report from the attorney representing the County and comments made by Chair Tina Mole.

50. On December 11, 2019, Respondent Board of Supervisors passed a Resolution, adopting the opinion of Riccio, and terminated Petitioner effective immediately. A copy of the Resolution is attached as **Exhibit F**.

## AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST ALL DEFENDANTS
## (FIRST AMENDMENT RETALIATION)

51. The Plaintiff has a constitutionally protected civil right to testify truthfully in Court.

52. The Plaintiff's truthful testimony provided in a New York State Family Court proceeding on or about May 31, 2019 was and is constitutionally protected activity.

53. The Plaintiff has a constitutionally protected civil right to truthfully answer questions posed by a Family Court Judge in a Family Court proceeding.

54. The Plaintiff's truthful answers provided to a Family Court Judge during a proceeding on or about June 6, 2019 was and is constitutionally protected activity.

55. The Plaintiff suffered a series of adverse employment actions including:

   a. She was censured by Defendants Merklen and Mole in a letter dated June 11, 2019;

   b. She was suspended from her position as Commissioner of Social Services with a letter dated July 9, 2019;

   c. She was served with charges falsely alleging conduct unbecoming an employee, insubordination, misconduct, breach of a duty of loyalty and mismanagement;

   d. She was subjected to a hearing and forced to answer and defend against false charges incurring significant expenses in securing that defense;

   e. She was terminated from her position as Commissioner of Social Services on or about December 11, 2019.

56. Plaintiff's truthful testimony and refusal to provide false or misleading testimony about and concerning the placement of Child One was a substantial motivating factor in Defendants' determination to retaliate against the Plaintiff and to subject Plaintiff to adverse employment actions including the dismissal of Plaintiff from further employment as the Commissioner of Social Services for Delaware County.

57. Plaintiff's truthful response to questions posed by the Family Court Judge in a Family Court proceeding was a substantial motivating factor in Defendants' determination to retaliate against the Plaintiff and to subject Plaintiff to adverse employment actions including the

dismissal of Plaintiff from further employment as the Commissioner of Social Services for Delaware County.

58. The Plaintiff is protected by the First Amendment of the United States Constitution from having to be forced, directed, or coerced by the Defendants to testify untruthfully under oath.

59. The Plaintiff testified while acting as Commissioner for Social Services for the County of Delaware, and was otherwise acting in her official capacity as a public servant and an employee of the County of Delaware.

60. That in the capacity as Commissioner of Social Services for the County of Delaware, Plaintiff had a moral and legal responsibility to make sure that all testimony given under oath at the Family Court proceeding was truthful and accurate in all respects.

61. The Defendants, and each of them, acted in concert to threaten and coerce Plaintiff to falsify her official testimony thereby violating Plaintiff's First Amendment rights under the United States Constitution.

62. Plaintiff's unwillingness to compromise her integrity and conspire with the Defendants to conceal the appropriate placement of the child resulted in the Defendants' decision to seek and secure Plaintiff's termination as the Commissioner of Social Services for the County of Delaware.

63. That as a direct result of the Defendants' retaliatory conduct, including securing the termination of Plaintiff, that Plaintiff was caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits, loss of opportunities for advancement in her career as Commissioner of Social Services, and financial damages due to the loss of pay and benefits

associated with her career and damages consisting of the costs incurred in defending against false and improper discipline charges.

64. As a result of the foregoing, Plaintiff has sustained damages.

## AS AND FOR A SECOND CAUSE OF ACTION AS AGAINST ALL DEFENDANTS (FREE SPEECH RETALIATION)

65. Plaintiff had a constitutionally protected right to publish a letter responding to Defendants actions in censuring her in a letter dated June 11, 2019 for her testimony in a Family Court proceeding and for answering truthfully questions posed by a Family Court Judge.

66. The matters raised in Plaintiff's June 20, 2019 letter responding to the June 11, 2019 letter of Defendants Merklen and Mole were matters of significant public concern.

67. Because Plaintiff published the June 20, 2019 letter, she suffered a series of adverse employment actions including:

   a. She was suspended from her position as Commissioner of Social Services with a letter dated July 9, 2019;

   b. She was served with charges falsely alleging conduct unbecoming an employee, insubordination, misconduct, breach of a duty of loyalty and mismanagement;

   c. She was subjected to a hearing and forced to answer and defend against false charges incurring significant expenses in securing that defense;

   d. She was terminated from her position as Commissioner of Social Services on or about December 11, 2019.

68. Plaintiff's letter dated June 20, 2019 responding to the June 11, 2019 letter of Defendants Merklen and Mole was a substantial motivating factor in Defendants' determination to retaliate against the Plaintiff and to subject Plaintiff to adverse employment actions including

15

the dismissal of Plaintiff from further employment as the Commissioner of Social Services for Delaware County.

69. That as a direct result of the Defendants' retaliatory conduct, including securing the termination of Plaintiff, that Plaintiff was caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits, loss of opportunities for advancement in her career as Commissioner of Social Services, financial damages due to the loss of pay and benefits associated with her career, and damages consisting of the costs occurred in defending against false and improper discipline charges.

70. As a result of the foregoing, Plaintiff has sustained damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, seeks the following relief:

1. Accept jurisdiction over this case;

2. Impanel a jury to hear and decide this matter;

3. Award plaintiff make whole relief including, an order of reinstatement to her position as Commissioner of Social Services or front pay, reimbursement of all costs and expenses incurred in defending against the disciplinary charges brought by defendants, back pay and benefits, compensatory damages against all defendants and punitive damages against all individual defendants;

4. Award plaintiff reasonable costs, disbursements and interest associated with this litigation including attorney fees pursuant to 42 U.S.C.A. § 1988.

5. Order any other further relief it deems just and proper.

Dated: January 3, 2022
       Albany, New York

**GLEASON, DUNN, WALSH & O'SHEA**

By: _____
RONALD G. DUNN., ESQ,
(Bar Roll No. 101553)
*Attorneys for Plaintiff*
Office and P.O. Address
40 Beaver Street
Albany, New York 12207
(518) 432-7511
rdunn@gdwo.net

17