UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

DANA SCUDERI-HUNTER,

                            Plaintiff,

        -against-                                          3:22-CV-0002 (LEK/ML)

AMY B. MERKLEN, *et al.*,

                            Defendants.

_____

### <u>MEMORANDUM-DECISION AND ORDER</u>

## I.    INTRODUCTION

On January 3, 2022, Plaintiff Dana Scuderi-Hunter commenced this civil rights action

pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of her rights under the First and

Fourteenth Amendments to the United States Constitution. Dkt. No. 1 ("Complaint") ¶ 1.

Plaintiff alleges that Defendants Amy B. Merklen, Tina B. Mole, the Delaware County Board of

Supervisors, and the County of Delaware "jointly and severally retaliated against Plaintiff in a

variety of ways, including the prosecution of a Civil Service Proceeding that resulted in the

removal of Plaintiff from her position of Commissioner of Social Services . . . ." <u>Id.</u> ¶ 2.

Now before the Court is Defendants' Motion to Dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 12 ("Motion"). For the reasons that follow,

the Court grants the Motion.

## II.    BACKGROUND

The following factual allegations are set forth in Plaintiff's Complaint and the attached

exhibits, which the Court accepts as true for the purpose of deciding the Motion. <u>See</u> <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 678 (2009) (recognizing the "tenet that a court must accept as true all of the

[factual] allegations contained in a complaint" when ruling on a motion to dismiss for failure to

state a claim); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim . . . a district court must limit itself to facts stated in the complaint or *in documents attached to the complaint as exhibits*" (emphasis added)).

Plaintiff served as the Delaware County Commissioner of Social Services from January 7, 2015, "until her removal and termination on December 11, 2019." Compl. ¶ 11. Plaintiff, as Commissioner, "ha[d] the ultimate responsibility as custodial parent for all foster children" in Delaware County. Id. ¶ 15. This "mean[s] she had the responsibility to make decisions on what the appropriate services are for children in her care for substance abuse services, taking into account the professional opinions of mental health experts such as [the] Delaware County Office of Mental Health Services." Id. Plaintiff, as Commissioner, "also ha[d] the statutory obligation to advocate for alternatives to secured detention in order to house a child in her custody in the 'least restrictive environment.'" Id. ¶ 16.

**A.  Plaintiff's Testimony in Family Court**

"The central event underlying . . . Plaintiff's claims involve[s] the truthful testimony that [Plaintiff] provided during a Family Court proceeding in May of 2019." Id. ¶ 19. "Specifically, the [a]ttorney for a [minor child] under [Plaintiff's] supervision called [Plaintiff] to testify at a Family Court proceeding involving the appropriate placement of [that] child . . . ." Id. For the purposes of the Complaint, Plaintiff refers to this minor child as "Child One." Id. ¶ 20.

Child One had "a substance abuse problem," and "was frequently running away from foster care." Id. ¶ 21. This led the Delaware County Probation Department to "bring[] a Petition in Family Court seeking to have Child One placed in secure detention." Id. The "Family Court [then] temporarily placed the child in juvenile secure detention while the Social Services

2

Department was trying to find an available slot at an appropriate facility for substance abuse treatment." Id. "When that placement of Child One became delayed, the Family Court held a hearing on May 31, 2019[,] to determine how to expedite treatment for the child while still housing the child in the least restrictive environment." Id.

Plaintiff's "opinion . . . was that Child One needed substance abuse treatment[,] and because the child was not receiving that treatment in secure detention," Plaintiff "needed to house the child in an alternative supervised foster care setting that would allow the child to receive substance abuse treatment immediately." Id. ¶ 22. However, the Department of Probation believed "that the child should remain in secure detention even if that meant that substance abuse treatment was to be delayed." Id.

"[T]he attorney for Child One" called Plaintiff "to testify at the Family Court proceeding on May 31, 2019[,] involving the appropriate placement of Child One in her custody[,]" although Plaintiff notes that she "was not technically subpoenaed to give said testimony . . . ." Id. ¶ 23. During the hearing, Plaintiff "testified to . . . what was in the best interests of Child One consistent with the legal requirement that Child One be housed in the least restrictive environment." Id. ¶ 24. In addition, she "testified truthfully under oath that Child One needed substance abuse treatment and that Social Services could provide a less restrictive setting than secure detention." Id. ¶ 25. Plaintiff further "testified that Social Services could provide foster care in a setting where there was 24/7 supervision." Id.

In the same hearing, Merklen, "the appointed County Attorney for the County of Delaware," id. ¶ 7, "explicitly informed the [Family] Court that she represented both the Probation Department and [Plaintiff] as the Commissioner of Social Services," id. ¶ 26. "That was so, even though Probation and [Plaintiff] had conflicting positions on the central issue of

what was the appropriate least restrictive environment to house Child One." Id. Despite this

conflict of "divergent interests[,]" "[a]t no point did . . . Merklen explain to [Plaintiff] . . . []or

. . . [the] Director of the Department of Probation what the risks and benefits were for

[Merklen's] continued simultaneous representation or obtain an informed consent confirmed in

writing permitting the simultaneous representation . . . ." Id. ¶ 29. Merklen then proceeded to

cross-examine Plaintiff and "undermine the position (interests) advocated by [Plaintiff] in

support of the Child in her custody while simultaneously advancing the contrary position

(interests) of the Department of Probation." Id. ¶ 30.

After hearing Plaintiff's testimony, the Family Court "agreed that Child One should be

placed in supervised foster care with an ankle bracelet to monitor the child's whereabouts." Id. ¶

31. "That placement allowed for substance abuse treatment consistent with a core

recommendation of the County's Mental Health Services and consistent with the general legal

principle that a minor child should be housed in the least restrictive appropriate setting." Id. A

week later, the Family Court resumed proceedings concerning the placement of Child One,

during which Plaintiff "answered questions posed by the Family Court Judge on the proper

placement of Child One." Id. ¶ 33.

**B.  The Retaliatory Acts for Plaintiff's Truthful Testimony**

"In the days immediately following the Family Court proceeding," id. ¶ 34, Merklen and

Mole, the "Chairman of the Delaware County Board of Supervisors," id. ¶ 8, "co-authored a

letter dated June 11, 2019, reprimanding [Plaintiff] for [her] actions in Family Court," id. ¶ 34. In

the letter, Merklen and Mole "criticized [Plaintiff] because the testimony she gave in the Family

Court proceeding advocated that a foster child in her custody should be placed in a foster home

rather than testify consistent with the position Merklen was advocating for on behalf of the

Department of Probation." Id. ¶ 35. They "also reprimanded [Plaintiff] for answering questions posed by the Family Court during the June 6, 2019[,] proceedings." Id. ¶ 37. Plaintiff notes that "[a]t the time of the June 11, 2019[,] letter was prepared[,] neither Merklen nor Mole was a supervisor over [Plaintiff]." Id. ¶ 38. Rather, "as Commissioner of Social Services[,] [Plaintiff] reported to the Committee for Social Services which consisted of three members of the Board of Supervisors." Id. ¶ 39.

"At the request of the Committee for Social Services, [Plaintiff] responded to the letter of June 11, 2019[,] with her letter dated June 20, 2019." Id. ¶ 40. She addressed this letter to "the Honorable Social Services Committee," wherein she accused Merklen of unethical conduct related to Merklen's acts in the Family Court proceeding. Dkt. No. 1-2 at 1. Plaintiff "was then subsequently placed on paid leave of absence with a letter dated July 9, 2019." Compl. ¶ 41. "The same letter confirmed that the County offered the Commissioner the opportunity to resign. When Scuderi-Hunter declined[,] the County began an investigation that included false claims of fraud." Id. ¶ 42. "Five weeks after [Plaintiff] was placed on paid leave," the Delaware County Board of Supervisors issued charges against Plaintiff, "alleg[ing] conduct unbecoming of an employee, insubordination, misconduct, breach of the duty of loyalty[,] and mismanagement." Id. ¶ 43. But according to Plaintiff, these charges "were false and in retaliation for [Plaintiff] providing truthful testimony and answering the Family Court's Questions in the Family Court proceeding." Id. ¶ 44.

In late September and early October of 2019, "a post-suspension hearing to review and determine [the] discipline charges was held . . . ." Id. ¶ 45. On December 6, 2019, the hearing officer "issued a Decision and Recommendation . . . that [Plaintiff's] employment be terminated." Id. ¶ 47. According to Plaintiff, "it is unclear precisely what acts alleged in the

charges as inappropriate were sustained, but it appears that the [h]earing [o]fficer found that

[Plaintiff] engaged in misconduct for the following acts alleged . . . ." Id. 48.

    a.   [Plaintiff] had an uncooperative relationship with [Merklen] and the Probation Department because in a Family Court proceeding [Plaintiff] failed and refused to conform her position and testimony on the appropriate placement and treatment for a child in her custody with the position advocated by [Merklen] and the Probation Department and as such [Plaintiff] was disloyal to the County and insubordinate for failing to follow the directions of [Merklen] . . . .

    b.   [Plaintiff] failed to notify [Merklen] in advance of a Family Court proceeding of her position on the proper treatment and placement of a child in her custody and as such engaged in misconduct by creating a conflict . . . .

    c.   [Plaintiff] was insubordinate and engaged in misconduct for disobeying an order from [Merklen] that she not communicate with the attorneys' retained to represent a child in her custody as the Commissioner . . . .

    d.   [Plaintiff] engaged in misconduct in writing a letter addressed to the Board of Supervisors responding to the allegations raised by [Merklen] in that she stated [Merklen] had a conflict of interest . . . .

    e.   [Plaintiff] engaged in misconduct or incompetence when she raised her voice in a telephone conversation with an employee of Social Services in communicating what the position of the Department of Social Services was on the proper placement of a child under the supervision of the Department of Social Services . . . .

    f.   [Plaintiff] engaged in misconduct constituting Criminal Child Neglect by delaying the approval of a request to administer a prescription drug to a child in her custody until the two treating professionals treating the same conditions and symptoms communicated with each other over what each professional was doing . . . .

    g.   [Plaintiff] engaged in misconduct by delaying the return of a work computer after her suspension . . . .

Id. ¶ 48 (citing various excerpts from the hearing officer's Decision and Recommendation, a copy of which is attached to the Complaint as an exhibit, Dkt. No. 1-5). The hearing officer recommended that Plaintiff be terminated from her employment. See Dkt. No. 1-5 ("Hearing Officer's Decision and Recommendation").

After the hearing, the Delaware County "Board of Supervisors was prevented from reviewing a full copy of the record before making its decision." Compl. ¶ 49. "That was accomplished by the County limiting access to the record[,] including the transcript, exhibits[,] and briefs[,] by requiring an appointment to a review in the Personnel Department during regular business hours." Id. "Board members were not provided copies of any of the testimony, exhibits[,] or briefs." Id. "As a result . . . the members of the Board . . . limited their review solely to the [the hearing officer's] Decision, a report from the attorney representing the County[,] and comments made by . . . Mole." Id. Finally, on December 11, 2019, the Board "passed a Resolution, adopting the opinion of [the hearing officer], and terminated [Plaintiff] effective immediately." Id. ¶ 50.

**C. The Nature of Plaintiff's Suit**

The events described above led Plaintiff to initiate this civil rights action pursuant to Section 1983 for violations of her First Amendments rights as incorporated against the State of New York through the Fourteenth Amendment. Id. ¶ 1. Plaintiff's first cause of action for First Amendment retaliation arises from the "adverse employment actions" she suffered because of her truthful testimony and answers in the Family Court proceedings. Id. ¶ 56. Plaintiff's second cause of action for retaliation arises from the "adverse employment actions" she suffered because of her "letter responding to Defendants['] actions in censuring her" after her testimony in the Family Court proceedings. Id. ¶ 65. In her prayer for relief, Plaintiff seeks, among other things,

monetary "damages against all individual defendants," as well as "an order of reinstatement to her position as Commissioner of Social Services . . . ." <u>Id.</u> at 16.

## III.   LEGAL STANDARD

Now before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint. <u>See</u> Mot. "[A] judgment of dismissal pursuant to Fed. R. Civ. P. 12(b)(6) can only be entered if a court determines that, as a matter of law, a plaintiff failed to state a claim upon which relief can be granted . . . ." <u>Melendez v. City of New York</u>, 16 F.4th 992, 1010 (2d Cir. 2021). "In determining if a claim is sufficiently 'plausible' to withstand dismissal," <u>id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678), a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff," <u>Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.</u>, 843 F.3d 561, 566 (2d Cir. 2016) (citation omitted). A court, however, need not accept "conclusory allegations or legal conclusions couched as factual . . . allegations." <u>Nielsen v. Rabin</u>, 746 F.3d 58, 62 (2d Cir. 2014) (quoting <u>Rothstein v. UBS AG</u>, 708 F.3d 82, 94 (2d Cir. 2013)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"In considering a motion to dismiss for failure to state a claim . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits . . . ." <u>Kramer</u>, 937 F.2d at 773. However, "a district court . . . may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." <u>Id.</u> Specifically, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in

the court records of prior litigation and that relate to the case sub judice." Jianjun Lou v. Trutex, Inc., 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012) (citations omitted). While "a court may take judicial notice of a document filed in another court to establish the fact of such a document," a court "cannot take judicial notice of the factual findings of another court." In re Olympia Off. LLC, 585 B.R. 661, 667 (E.D.N.Y. 2018).

## IV.  DISCUSSION

Defendants first advocate for dismissal of the Complaint because of "collateral estoppel." Dkt. No. 12-1 ("Defendants' Memorandum") at 4–9. Specifically, Defendants argue that Plaintiff clearly raised "the issue of whether or not her termination was based on [constitutionally] protected speech[]" in the state courts of New York, and that their uniform rejection of her retaliation theory is entitled to preclusive effect in this Court. Id. at 2, 4–9. In the alternative, Defendants argue that even if Plaintiff's claims are not precluded, "she has failed to state any cause of action upon which relief can be granted, has failed to state a claim of municipal liability, and failed to state a claim of personal involvement by the named Defendants." Id. at 1.

In support of their argument for collateral estoppel, Defendants have provided the Court with copies of two documents from Plaintiff's state court challenge to her termination. The first exhibit is a copy of the decision issued by the New York State Supreme Court, Appellate Division, Third Judicial Department ("Third Department") in the matter of Scuderi-Hunter v. County of Delaware et al. (N.Y. App. Div. Feb. 17, 2022). Dkt. No. 12-3 ("Third Department Decision").[1] The second exhibit provided by Defendants is a copy of the memorandum of law submitted by Plaintiff in support of her Article 78 petition seeking review of the Delaware

---

[1] A published version of the decision is available in West's New York Supplement. See 163 N.Y.S.3d 664 (N.Y. App. Div. 2022).

County Board of Supervisors' termination to terminate her employment. Dkt. No. 12-4 ("Plaintiff's Article 78 Brief"); see also N.Y. C.P.L.R. ch. 8, art. 78. Plaintiff does not dispute the authenticity of either document, and repeatedly cites to the same Third Department Decision provided by Defendants in her Response to the Motion. See, e.g., Dkt. No. 16-2 ("Plaintiff's Response") at 16. Given that "a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions" "when a motion to dismiss is premised on the doctrine of collateral estoppel," MMA Consultants 1, Inc. v. Republic of Peru, 245 F. Supp. 3d 486, 499–500 (S.D.N.Y. 2017) (cleaned up), this Court may consider both exhibits provided by Defendants in resolving the Motion.

### A.  The Article 78 Proceeding

The Delaware County Board of Supervisors terminated Plaintiff from her employment on December 11, 2019. Compl. ¶ 50. Half a year later, "[i]n June 2020, [Plaintiff] commenced [her] CPLR article 78 proceeding in [the New York State] Supreme Court [of Delaware County] seeking annulment of the Board's determination, reinstatement to her position, back pay to the date of her termination[,] and counsel fees and costs." Scuderi-Hunter, 163 N.Y.S.3d at 667. She advanced several arguments, including "that the misconduct findings were not supported by substantial evidence and that the penalty of termination was so severe as to shock the conscience." Id. Plaintiff "also made various claims of legal and procedural error with respect to the Hearing Officer's determination and claimed that certain specifications in the charge document were time-barred." Id. After conducting a remote proceeding, the New York State Supreme Court, Delaware County, "rejected [her] claims of legal and procedural error and transferred the proceeding to" the Third Department. Id. (citing N.Y. C.P.L.R. § 7804(g)).

In May 2021, Plaintiff, through her attorney, filed a brief in support of Plaintiff's appeal before the Third Department. See Pl.'s Art. 78 Br. at 56. In the Article 78 Brief's "Preliminary Statement," Plaintiff asserted the following:

> The case is dominated by a central event where . . . County Attorney [Merklen] represented both the Probation Department and the Commissioner of Social Services [i.e., Plaintiff] in the same proceeding even though each had opposing interests. After [Plaintiff] testified in the proceeding and the Family Court adopted the Commissioner's position, [Merklen] and County Board Chair [Mole] admonished [Plaintiff] for being disloyal to the County because she did not conform her position to the position [Merklen] advocated for Probation. [Plaintiff] responded with a letter defending her position and noting [Merklen's] ethical breach. Those events dominated the hearing and the decision terminating [Plaintiff].

Id. at 2 (internal citation omitted). In the "Argument" section of the Article 78 Brief, Plaintiff also contended, among other things, that "[t]he [c]onstitutionally [p]rotected [a]ct of [t]ruthful [t]estimony [c]annot [f]orm the [b]asis for [d]isciplinary [c]harges." Pl.'s Art. 78 Br. at 34. She further claimed that, by "disciplin[ing] [Plaintiff]" for exercising her "First Amendment rights," id. at 36, the County unlawfully retaliated against her, id. at 35 (citing Benedict v. Town of Newburgh, 95 F. Supp. 2d 136, 143 (S.D.N.Y. 2000), and Grow v. Cook, 399 N.Y.S.2d 938, 940 (N.Y. App. Div. 1977)).

On February 17, 2022, the Third Department issued its Decision, ultimately confirming the Board of Supervisors' determination to terminate Plaintiff's employment but with modification. Scuderi-Hunter, 163 N.Y.S.3d at 673. The Third Department began its analysis "by addressing the Board's resolution terminating [Plaintiff's] employment, particularly as it relates to the [h]earing [o]fficer's finding that [Plaintiff's] actions in a Family Court juvenile delinquency proceeding amounted to disloyalty and misconduct." Id. at 667.

> The first "resolved" clause [in the Board's resolution] includes the following declaration: "[T]he Board does hereby declare that the testimony of [petitioner] at a Family Court hearing described in the transcripts of this matter is not a factor in this decision but rather that the conduct of [petitioner] in engaging in acts of lack of cooperation, disloyalty, insubordination, conduct unbecoming, and misconduct [form] the basis of this decision as found and recommended by the Hearing Officer." Considering that the Hearing Officer's findings of disloyalty and misconduct are based in significant part on petitioner's role in testifying at the aforementioned Family Court hearing, it is difficult to reconcile the Board's declaration with the Hearing Officer's recommendation other than to conclude that petitioner's role in that matter cannot serve as the basis for any finding of misconduct. Moreover, it is evident that the charges pertaining to the Family Court juvenile delinquency proceeding reflect a fundamental misunderstanding of the statutory roles of the Commissioner of Social Services, the County Attorney and the Probation Department.

Id. (alterations in original). After recounting in detail the relevant statutory provisions governing the distinct roles of the Commissioner of Social Services, the County Attorney, and the Probation Department, the Third Department determined that Plaintiff "opt[ing] to promote a less stringent measure than her counterparts does not, as charged by [the County], constitute a breach of loyalty owed to either the County Attorney or the Director of Probation, or vice versa." Id. at 668. Given the above, the Third Department found that, "to the extent that the Board relied, at all, on the [h]earing [o]fficer's findings with respect to charge 1, specification Nos. 1.42 through 1.91"—which delineate findings of disloyalty and misconduct based on Plaintiff promoting a less stringent measure for Child One than her counterparts—the Board's "determination is not supported by substantial evidence." Id. "It therefore follows that so much of the Board's determination as sustained said specifications are annulled." Id.

Next, the Third Department reviewed "specification Nos. 5.15 through 5.22 as set forth in charge 5, alleging that [Plaintiff] engaged in misconduct in 2016 when she neglected a child in her custody by withholding certain medication from the child . . . ." Id. at 668. There, the Third

Department also found that "substantial evidence does not support the [h]earing [o]fficer's finding that [Plaintiff's] conduct in initially withholding . . . Lexapro from [a] child constituted misconduct . . . ." Id. at 671 (citations omitted). "Therefore, so much of the [Board's] determination as sustained charge 5, specification Nos. 5.15 through 5.22 is annulled." Id.

However, the Third Department still found "substantial evidence in the record to sustain [all the] other misconduct findings made by the [h]earing [o]fficer," id. at 671, and thus proceeded to examine whether the penalty of "termination was disproportionate to the sustained charges," id. at 672. The Third Department concluded: "Given [Plaintiff's] creation of a hostile work environment, her retaliatory conduct towards [another employee,] and her failure to turn over County property, we cannot conclude that the penalty of termination was 'so disproportionate to the charged offenses as to shock one's sense of fairness.'" Id. at 672–73 (quoting Matter of Young v. Vill. of Gouverneur, 44 N.Y.S.3d 235, 238 (N.Y. App. Div. 2016)). While the Third Department did not explicitly discuss Plaintiff's First Amendment retaliation argument in its Decision, the court noted that "[w]e have considered [Plaintiff's] remaining contentions and find them to be unavailing." Scuderi-Hunter, 163 N.Y.S.3d at 674.

Plaintiff then "filed a motion to reargue or in the alternative grant leave to appeal," Pl.'s Resp. at 17, which the Third Department denied on June 3, 2022, Scuderi-Hunter v. County of Delaware et al., Case No. 532293, NYSCEF Doc. No. 30 (N.Y. App. Div. June 3, 2022). Plaintiff then sought leave to appeal from the New York Court of Appeals, but that court denied her motion as well. See Scuderi-Hunter v. County of Delaware, 39 N.Y.3d 903 (N.Y. 2022).

### B. The Law of Issue Preclusion, i.e., Collateral Estoppel

"Issue preclusion, also referred to as collateral estoppel, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to a

prior judgment.'" Cayuga Nation v. Tanner, 6 F.4th 361, 374 (2d Cir. 2021) (quoting New Hampshire v. Maine, 532 U.S. 742, 784–49 (2001)); see also United States v. Jones, 43 F.4th 94, 101 n.3 (2d Cir. 2022) (noting that "[t]he Supreme Court 'has observed' that '"issue preclusion" is the more descriptive term'" (quoting Bravo-Fernandez v. United States, 580 U.S. 5, 137 n.1 (2016)). "As the Supreme Court made clear in Exxon Mobil, 'a federal court may be bound to recognize the . . . issue-preclusive effects of a state-court judgment' even if there is jurisdiction to hear the merits of the claim, and the claim is otherwise properly presented." McKithen v. Brown, 481 F.3d 89, 103 (2d Cir. 2007) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)). "In determining whether . . . issue preclusion applies, [the] inquiry is governed by New York state law." McKithen, 481 F.3d at 103–04 (citing 28 U.S.C. § 1738 ("Such . . . judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."), Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 93 (2d Cir. 2005), and Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523 (1986)).

"Under New York law, issue preclusion will apply only if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" Hoblock, 422 F.3d at 94 (brackets in original) (quoting Moccio v. New York State Office of Court Admin., 95 F.3d 195, 200 (2d Cir. 1996), abrogated on other grounds by Exxon Mobil, 544 U.S. 280). "The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion . . . . In contrast, the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." Davis v. Proud, 2 F.

Supp. 3d 460, 481 (E.D.N.Y. 2014) (quoting Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir.

2013)). "The party asserting preclusion bears the burden of showing with clarity and certainty

what was determined by the prior judgment, and issue preclusion will apply only if it is quite

clear that this requirement has been met." Davis, 2 F. Supp. 3d at 481 (quoting Postlewaite v.

McGraw-Hill, 333 F.3d 42, 49 (2d Cir. 2003)).

"[I]n order for a judgment to be preclusive, the issue in question must have been actually

decided, and its determination must have been essential to the judgment." Postlewaite, 333 F.3d

at 48 (citing Tucker v. Arthur Andersen & Co., 646 F.2d 721, 728 (2d Cir. 1981)). "If an issue

was not actually decided in the prior proceeding, or if its resolution was not necessary to the

judgment, its litigation in a subsequent proceeding is not barred by [issue preclusion]."

Postlewaite, 333 F.3d at 48 (collecting cases). "The prior decision of the issue need not have

been explicit, however, if by necessary implication it is contained in that which has been

explicitly decided." Davis, 2 F. Supp. 3d at 481 (quoting Postlewaite, 333 F.3d at 48); see also

Fuchsberg & Fuchsberg v. Galizia, 300 F.3d 105, 109 (2d Cir. 2002) (holding that a prior

decision will have preclusive effect with regard to an issue, notwithstanding the failure of that

prior decision to explicitly address that issue, "if resolution of the issue was 'by necessary

implication . . . contained in that which [was] explicitly decided" (citation omitted) (alterations in

original)). "If the decision was implicitly necessary, 'it will be the basis for collateral estoppel.'"

Postlewaite, 333 F.3d at 48 (citation omitted).

### C. Issue Preclusion as Applied to Plaintiff's Case

The Court begins its analysis of issue preclusion by examining whether Defendants have

satisfied their burden to show that the issue of First Amendment retaliation was "actually and

necessarily decided in the prior [Article 78] proceedings." Latino Officers Ass'n v. City of N.Y.,

253 F. Supp. 2d 771, 787 (S.D.N.Y. 2003), abrogated on other grounds by Exxon Mobil, 544 U.S. 280.

In their Motion, Defendants argue that "[t]here is no ambiguity as to whether Plaintiff made an argument of retaliation before the [Third Department]." Defs.' Mem. at 7. In fact, "Plaintiff's arguments in that venue on the issue of retaliation specifically labels itself by that identity and provides pages of analysis regarding the same." Id. (citing Art. 78 Br. at 34–36). Defendants also submit that "[u]pon consideration of this argument, the [Third Department] concluded . . . that the penalty imposed by the Board was not 'so disproportionate to the charges offenses as to shock one's sense of fairness.'" Defs.' Mem. at 8 (quoting Scuderi-Hunter, 163 N.Y.S.3d at 673). The court even "went further . . . and expressly noted that it 'considered Plaintiff's remaining contentions and f[ou]nd them to be unavailing,' which necessarily includes Plaintiff's contention in her [Article 78 Brief] that she was discharged in retaliation for her protected speech." Defs.' Mem. at 8 (quoting Scuderi-Hunter, 163 N.Y.S.3d at 673).

Plaintiff responds to Defendants' threshold showing by contesting their interpretation of the Third Department Decision. Pl.'s Resp. at 16–18. Plaintiff argues that "[t]here is no way to read the [Third Department] Decision as holding that the Decision to charge, prosecute and ultimately terminate [Plaintiff] was not related to her testimony or that the County acted properly in terminating her because of that testimony." Id. at 17 (emphasis in original). Rather, "[t]he exact opposite is . . . the correct conclusion. The [Third Department] Decision establishes that the County acted because of [Plaintiff's] protected right to testify. That establishes Plaintiff's claims [of retaliation] here, not the reverse." Id.

To support her reading of the Third Department Decision, Plaintiff shares the following excerpt from it:

> Considering that the Hearing Officer's findings of disloyalty and misconduct are based in significant part on petitioner's role in testifying at the aforementioned Family Court hearing, it is difficult to reconcile the Board's declaration with the Hearing Officer's recommendation other than to conclude that petitioner's role in that matter cannot serve as the basis for any finding of misconduct.

Id. (quoting Scuderi-Hunter, 163 N.Y.S.3d at 667). However, contrary to Plaintiff's characterization of that excerpt, that paragraph does not actually "establish[] that the County" terminated her employment "because of [her] protected right to testify." Pl.'s Resp. at 17. If that had been the case—i.e., "had the termination been . . . retaliatory"—then the Third Department "could not have found [Plaintiff's termination] to have been rational, which is the essence of a finding of support by substantial evidence." Latino Officers, 253 F. Supp. 2d at 787; see also Jessen v. Cavanaugh, 9 F. Supp. 2d 393, 397 (S.D.N.Y. 1998) (First Amendment retaliation claim barred by issue preclusion where Article 78 tribunals rejected argument that challenged employment decision was made in bad faith); Beharry v. M.T.A. New York City Transit Auth., No. 96-CV-1203, 1999 WL 151671, at *8 (E.D.N.Y. Mar. 17, 1999) (Article 78 court's determination that plaintiff's dismissal was "rational" necessarily determined that the urinalysis test was administered constitutionally and that the appeals process comported with due process because "[t]o find otherwise would require this Court to conclude that the state court's decision upheld a constitutionally infirm (and thus inherently irrational) dismissal action").

Instead, the above excerpt from the Third Department Decision shows that Plaintiff "opt[ing] to promote a less stringent measure than her counterparts" in the Family Court proceedings could not be sustained as *one* of the reasons to support her termination, given that under state law, Plaintiff was not required to advocate for the same position as the Probation Department in the Family Court proceeding. Scuderi-Hunter, 163 N.Y.S.3d at 667–68. That explains why the Third Department found that, "to the extent that the Board relied, *at all*, on the

[h]earing [o]fficer's findings with respect to" Plaintiff promoting a less stringent measure for Child One than her counterparts, that "determination is not supported by substantial evidence." Id. at 668 (emphasis added). Notably, the Third Department did not couch its annulment of that determination on the ground that Plaintiff had a constitutional right to testify to her position with respect to Child One, but rather on the ground that Plaintiff was not under an obligation to conform her position to that of the Probation Department under state law. See id. at 667–68.

Therefore, Plaintiff's argument that the Third Department Decision "establishes Plaintiff's claims" of First Amendment retaliation is unavailing. Significantly, the Third Department nevertheless found "substantial evidence in the record to sustain other misconduct findings made by the [h]earing [o]fficer." Id. at 671. And as Defendants point out, crucial to the defense against a Section 1983 retaliation claim is the Mount Healthy defense, which provides that "even if there is evidence that the adverse employment action was motivated in part by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." Defs.' Mem. at 16 (quoting Heil v. Santoro, 147 F.3d 103, 110 (2d Cir. 1998); see also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286–87 (1977). The Third Department Decision, in finding that several reasons separate and apart from anything related to Plaintiff's testimony in the Family Court proceeding warranted her termination from employment, would necessarily sustain Defendants' Mount Healthy defense in this action, even if Plaintiff were able to prove she engaged in constitutionally protected speech (which Defendants do not concede).

It is also worth noting that the misconduct findings that were *sustained* by the Third Department included the specifications regarding Plaintiff's letter, dated June 20, 2019, which, according to Plaintiff, gives rise to her second cause of action for First Amendment retaliation:

18

6.8    On [that date], [Plaintiff] issued correspondence to the members of the Social Services Committee responding to the June 11, 2019 letter.

6.9    [Plaintiff] made false allegations of a conflict of interest, and otherwise attacked . . . County Attorney [Merklen] for her role in representing the County.

6.10    [Plaintiff] mischaracterized the description of the June 11, 2019[,] letter [sent by Merklen and Mole] and made statements disparaging the ethics of [Merklen] and further made false accusations that [Merklen] had regarding her "contractual obligations" as counsel for the Social Services Department.

6.11    [Plaintiff] made false accusations of unethical conduct, incompetence and self-dealing on the part of [Merklen].

6.12    The statements by [Plaintiff] were false and misleading and constitute acts of insubordination.

Hr'g Officer's Dec. & Rec. at 16. Again, if relying on the above reasons to terminate Plaintiff's employment constituted First Amendment retaliation, then the Third Department could not have concluded that this sustained finding of misconduct was "support[ed] by substantial evidence." Latino Officers, 253 F. Supp. 2d at 787.

That the Third Department never explicitly discussed the First Amendment retaliation argument raised in Plaintiff's Article 78 Brief is immaterial. As noted earlier, "[t]he prior decision of the issue need not have been explicit, however, if by necessary implication it is contained in that which has been explicitly decided." Davis, 2 F. Supp. 3d at 481 (quoting Postlewaite, 333 F.3d at 48); see also Fuchsberg, 300 F.3d at 109; Latino Officers, 253 F. Supp. 2d at 787. And even so, the Third Department did explicitly note that "[w]e have considered [Plaintiff's] remaining contentions and find them to be unavailing." Scuderi-Hunter, 163 N.Y.S.3d at 674. Those contentions included Plaintiff's argument that her termination amounted to unlawful retaliation under the First Amendment. See Pl.'s Art. 78 Br. at 2, 34–36.

19

Accordingly, Defendants have satisfied their burden to show that the issue of First Amendment retaliation was "actually and necessarily decided in the prior [Article 78] proceedings." Latino Officers, 253 F. Supp. 2d at 787. Since the filing of the Motion, nothing has disturbed the findings of those proceedings, as Plaintiff's requests for reargument and appeal have all been denied. See Scuderi-Hunter, Case No. 532293, NYSCEF Doc. No. 30 (N.Y. App. Div. June 3, 2022) (denying motion for reargument, and in the alternative, leave to appeal); Scuderi-Hunter, 39 N.Y.3d 903 (N.Y. 2022) (denying leave to appeal).

Given that Defendants have shown that the prior state court proceedings necessarily decided the lawfulness of Plaintiff's termination with respect to retaliation, the Court now turns to whether Plaintiff has carried her burden to show that she did not have a full and fair opportunity to litigate that very issue. In her Response to the Motion, Plaintiff fails to advance any specific argument suggesting that "the prior action did not afford a full and fair opportunity to" do so. Davis, 2 F. Supp. 3d at 481 (quoting Proctor, 715 F.3d at 414); see also Dkt. No. 18 ("Defendants' Reply") ("Plaintiff's Response provides no real argument as to why issue preclusion does not apply in this matter, instead choosing to rest upon bald assertions, without citation to case law.").

Plaintiff does argue against the application of res judicata, see Pl.'s Resp. at 18, since the relief available in a Section 1983 suit is generally more expansive than the relief available in an Article 78 proceeding, but Defendants have not invoked that doctrine as a basis for dismissal, see Defs.' Mem. at 1, 4–9 (arguing in general that the "principles of res judicata and collateral estoppel [should] apply" to Plaintiff's claims, but then specifically advocating for dismissal on collateral estoppel grounds only). And as cases like Latino Officers make clear, collateral estoppel—i.e., issue preclusion—may still apply even if the stricter requirements of res

judicata—i.e., claim preclusion—are not met. See 253 F. Supp. 2d at 782–83 (proceeding to analyze whether issue preclusion applies after concluding that claim preclusion does not because "there is an incomplete overlap between the relief available to the plaintiffs in their Article 78 proceedings and in this [Section 1983] case").

Accordingly, Plaintiff has "not sustained [her] burden of showing that [she] did not have a full and fair opportunity to litigate [her retaliation] claims before the Article 78 courts." Id. at 784. "To the extent [Plaintiff] seeks to relitigate the facts and circumstances surrounding the misconduct giving rise to [her] termination, [s]he is barred by issue preclusion, as these factual findings were essential to the state court's decision." Id. at 787 (citation omitted).

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this action; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all the parties, in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    March 20, 2023
          Albany, New York

LAWRENCE E. KAHN
United States District Judge